# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

PETER RAY ARAGON, aka
PETER LAYCOCK ARAGON,

      Petitioner,

vs.                                                          Civil No. 00-1354 MV/WWD

JOHN SHANKS, Warden and
PATRICIA A. MADRID, Attorney General,

      Respondents.

## MAGISTRATE JUDGE'S PROPOSED FINDINGS AND RECOMMENDED DISPOSITION
**Proposed Findings**

1. THIS MATTER comes before the Court upon Petitioner's application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, filed May 15, 2000. Mr. Aragon ("Aragon") is currently incarcerated and is proceeding *pro se* and *in forma pauperis*. He is confined pursuant to the judgment, sentence and commitment of the Thirteenth Judicial District Court in the County of Cibola for the crime of Conspiracy to Commit Forgery.[1]

2. Aragon was charged with Forgery and Conspiracy to Commit Forgery, based on an incident which occurred on April 19, 1993. The incident involves Petitioner providing a signed, stolen check to a Brett Hollar for cashing at First Bank of Grants for $300.76. Aragon gave Mr. Hollar a ride to the bank, and after Mr. Hollar cashed the check, Aragon paid him $100.00 and kept the remainder. The account holder, Thomas Nelson, testified at trial that he did not sign the

---

[1] Mr. Aragon filed another federal habeas petition based on another state conviction based on the offense of Attempted Escape from Jail, Civil No. 99-1004, which the Court has dismissed with prejudice (*see* Docs. 42, 43 in Civil No. 99-1004).

check, and that neither Aragon nor Hollar were authorized to withdraw funds.[2]

3. Aragon initially negotiated a plea agreement, but later withdrew the plea. His jury trial commenced on November 27, 1995. Petitioner was found not guilty of Forgery, but was convicted of Conspiracy to Commit Forgery.

4. Aragon was sentenced as a third habitual offender, based on a conviction and Supplemental of Child Abuse in 1990 and 1991; a 1983 conviction of Armed Robbery with Firearm Enhancement; and a conviction from 1976 of Embezzling Property and Stealing Property. Ans., Exs. A & B.

5. Aragon raises seven grounds in this petition:

(1) whether Petitioner was denied a fair trial due to ineffective assistance of counsel, at trial and at sentencing;

(2) whether the trial court denied Petitioner a fair trial by denying his motion for continuance based on the non-appearance of his expert;

(3) whether the trial court erred in setting an excessive bond;

(4) whether Petitioner was denied a fair jury trial as a result of the newspaper publication the week before trial alleging that Petitioner was charged with the crime of attempted escape;

(5) whether there was sufficient evidence to support Petitioner's conviction, and to support the trial court's denial of his motion for a directed verdict;

(6) whether Petitioner's right to self-representation was violated with respect to habitual offender proceedings, based on the trial court's denial of Petitioner's request to represent himself at the habitual offender enhancement hearing;

(7) whether Petitioner's due process rights were violated when his sentence was enhanced as an habitual offender based on an invalid prior conviction.

6. As Respondents note, all of the grounds raised in the federal petition have been

---

[2] These facts are from the Docketing Statement, which refers to the state record proper.

addressed and dismissed by the state court.  A federal court is authorized to grant a writ of habeas corpus to a person in custody pursuant to a state-court judgment, but only if the adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.  §28 U.S.C. 2254(d).[3]

**First Ground**

7.  Petitioner contends that he was denied a fair trial due to ineffective assistance of counsel, at trial and at sentencing.  The allegation that trial counsel was ineffective is measured by the familiar standard set forth in Strickland v. Washington, 466 U.S. 668, 690-92 (1984).  Under this analytical approach, a petitioner must demonstrate both that his trial attorney's performance fell below an objective standard of reasonableness and that he was prejudiced by the deficient representation.

8.  Aragon does not allege specific grounds for his claim of ineffective assistance.  Merely conclusory allegations of ineffective assistance are NOT enough.  U.S. v. Cox, 83 F.3d 336, 341 (10th Cir. 1996).  Even assuming them to be the same as those raised in the state court, I find them to be without merit  because the state court has addressed them and dismissed all of them with prejudice.  Ex. D at 2-3 (calendar notice); Ex. F at 2-3 (affirmance of calendar notice).

**Second Ground**

---

[3]  Because the state court fully articulated its reasoning for denying postconviction relief on the merits in each of the seven grounds raised by Petitioner, a review of the entire trial transcript was not necessary.

3

9. Petitioner contends that the trial court denied Petitioner a fair trial by denying his motion for continuance based on the non-appearance of his handwriting expert. However, as the state court of appeals noted, the expert (who became unavailable at the time of trial) was found to be irrelevant since the state was proceeding on the theory that Petitioner delivered a check knowing it to be forged, *not* that he forged the check. In addition, the state court noted that Petitioner could not claim to have suffered prejudice because he was acquitted of the forgery charge. Ex. D at 2; Ex. F. Thus, Petitioner should be denied relief on this ground.

**Third Ground**

10. Petitioner contends that the trial court erred in setting an excessive bond ($25,000 cash surety or 10% bond). In dismissing this claim, the state court noted that Aragon received credit against his sentence for his confinement after October 11, 1995 (the date the allegedly excessive bond was set), and therefore suffered no prejudice "even if the bond were arguendo excessive." Ex. D at 2 Ex. F at 2.

11. Further, the court pointed out that given Aragon's prior failures to appear in court as revealed in the criminal history Aragon voluntarily presented to the trial court, including his failure to appear for his preliminary hearing, see also Ex. C. at 2, the amount was not excessive.

12. For this issue, Petitioner does not specify what constitutional right has been violated. However, in considering prejudice to Aragon as well as his past history of failure to appear, the state court's findings are not contrary to clearly established United States Supreme Court law either under the Eighth Amendment, which prohibits the imposition of excessive fines and cruel and unusual punishment, see Furman v. Georgia, 408 U.S. 238 (1972) (per curiam), or under the

Due Process Clause which in itself prohibits states from imposing "grossly excessive" punishments.  See Cooper Ind., Inc. v. Leatherman Tool Group, Inc.,121 S.Ct. 1678, 1684 (2001) (citations omitted).   Therefore, relief on this ground should also be denied.

**Fourth Ground**

13. Petitioner contends that he was denied a fair jury trial as a result of the newspaper publication the week before trial alleging that Petitioner was charged with the crime of attempted escape.  Construed as either an ineffective assistance claim based on defense counsel's failure to effectively voir dire the jury, or as a due process claim, the issue is without merit.

14. The court of appeals found that exposure of jury members to the local newscast of Aragon's first appearance in another case did not provide a basis for a change of venue.   In addition, he had failed to demonstrate any prejudice even if jurors had realized that he was the same suspect in both cases.  Ex. D at 3.

15. During voir dire, the jury was not asked specifically about the newspaper article in question.  However, the jury was questioned as to whether or not they knew the defendant, witnesses, or nature of the incident alleged.  Ex. C at 5.

16. I find that the state court's finding that Aragon was not prejudiced was not an unreasonable application of clearly established Supreme Court law, nor was it an unreasonable determination of the facts in light of the evidence presented.  I also find that the issue has no merit if construed as a due process claim.   Petitioner cannot show that, even assuming some jurors knew him to be the defendant named in the newspaper article, his trial was rendered fundamentally unfair.  See Martin v. Kaiser, 907 F.2d 931, 934 (10th Cir. 1990); see also Marshall v. Lonberger, 459 U.S. 422, 438 n.6 (1983).   This claim should be dismissed with

prejudice.

**Fifth Ground**

17. Petitioner contends that there was insufficient evidence to support Petitioner's conviction, and to support the trial court's denial of his motion for a directed verdict.

18. Evidence is sufficient to support a criminal conviction "if a reasonable jury could find the defendant guilty beyond a reasonable doubt, given the direct and circumstantial evidence, along with reasonable inferences therefrom, taken in a light most favorable to the government." United States v. Mains, 33 F.3d 1222, 1227 (10th Cir. 1994); Jackson v. Virginia, 443 U.S. 307, 319 (1979).

19. The state court considered that, based on the testimony from Aragon's accomplice Brett Hollar, from the account holder and from Hollar's former girlfriend who had worked at the bank where the check was cashed, there was sufficient evidence to support the conviction. These findings are not contrary to the standard set forth by the United States Supreme Court for determining sufficiency of the evidence. Relief on this ground should be denied as well.

**Sixth Ground**

20. Petitioner alleges that his right to self-representation was violated with respect to habitual offender proceedings, based on the trial court's denial of Petitioner's request to represent himself at the habitual offender enhancement hearing.

21. A criminal defendant has a right under the Sixth Amendment to waive counsel and represent himself so long as he does so clearly and unequivocally in a knowing, intelligent, and timely manner. See Faretta v. California, 422 U.S. 806, 835 (1975). Further, although the Supreme Court has concluded that a defendant has a Sixth Amendment right of

6

self-representation, that right is not absolute. See Faretta v. California, 422 U.S. 806 (1975).

22. The state court of appeals found that Aragon did not make an unequivocal request to waive his right to counsel. Instead, he simply wanted to present his own motions at the hearing. The state court found that Aragon's request to act as co-counsel with his court-appointed counsel fell short of an unequivocal waiver. Ans., Ex. N at 2, P at 2. I find that the state court's disposition of this issue is not an unreasonable determination of the facts under clearly established law. Cmp. also Bassette v. Thompson, 915 F.2d 932, 941-42 (4th Cir.1990) (holding that the district court had not abused its discretion when it refused to permit a defendant, who had been represented by counsel during the guilt phase, to proceed pro se at sentencing). Thus, there was no violation of Petitioner's right to self-representation, and relief on this issue should be denied.

**Seventh Ground**

23. Petitioner contends that his due process rights were violated when his sentence was enhanced as an habitual offender based on two invalid prior convictions in 1976 and 1991.

24. *1976 guilty plea:* The first calendar notice which first addressed this issue proposed to reverse and remand this issue for further proceedings on the question of whether the state had presented some evidence in order to carry its burden of persuasion on the validity of the contested guilty pleas. Ex. L at 3- 4. However, the second calendar notice indicates that the state court found that even if the burden of persuasion was on the state, the state did present sufficient evidence to carry this burden. Ex. N at 8.

25. Aragon claimed that he pled guilty in 1976 to felony charges of embezzlement and stealing property based on the state's promise of probation if he would enter the armed forces. Ex. N at 8-9. The court of appeals noted that Petitioner did not produce any evidence, other

7

than his own testimony, "that any branch of the military had accepted him or would accept him for service." The court cited other reasons for its support of the trial court's determination that the convictions were constitutionally valid. The trial court may have been "skeptical as to whether he would have been accepted into any branch of the armed forces" in light of Aragon's past felony convictions. At 9.

26. Aragon's claim of constitutional invalidity had never been raised during the twenty years of his incarceration. Further, Aragon stipulated in a May 1991 plea agreement that the 1976 conviction was "valid and free from fundamental error." Ex. N at 9; Ex. P at 5-6.

27. *1991 guilty plea*: Aragon contends that when he pleaded guilty to a felony charge of child abuse in May 1991, he had not had his constitutional rights explained to him. The court of appeals noted that in a copy of the plea agreement introduced as state's Exhibit 7 and signed by Aragon, Aragon states that he had "discussed the case and my constitutional rights with my lawyer. . . ." Aragon's attorney also signed the agreement, stating that "I have discussed this case with my client and have advised him of his constitutional rights and all possible defenses." Ex. N at 9-10.

28. The state court affirmed this issue on the above evidence. As with Petitioner's other claims, I do not find that the state court's findings were contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States. Accordingly, relief on this issue should be denied.

**Recommendation**

I recommend that Petitioner's application for Writ of Habeas Corpus be DENIED and that this cause be DISMISSED WITH PREJUDICE. Within ten days after a party is served with a

copy of these proposed findings and recommendations that party may, pursuant to 28 U.S.C. § 636(b)(1), file written objections to such proposed findings and recommendations. A party must file any objections with the clerk of the district court within the ten day period allowed if that party wants to have appellate review of the proposed findings and recommendations. If no objections are filed, no appellate review will be allowed.

_____
UNITED STATES MAGISTRATE JUDGE